UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE SWEENEY, | : |
| | : |
| Plaintiff | : Civil Action No. |
| | : |
| | : **PLAINTIFF REQUESTS A** |
| -vs- | : **TRIAL BY JURY** |
| | : |
| MASTROCOLA TRUCKING, INC.; and | : **COMPLAINT** |
| TODD MASTROCOLA SR., individually; | : |
| | : |
| Defendants. | : |

Plaintiff, MICHELE SWEENEY ("Plaintiff" and/or "Sweeney"), by and through her undersigned counsel hereby files this Civil Action Complaint against Defendant, MASTROCOLA TRUCKING, INC. ("Defendant" and/or "Mastrocola") and upon information and belief avers the following:

### NATURE OF THE CASE

Plaintiff complains of race discrimination, hostile work environment, retaliation, and wrongful termination pursuant to the Civil Rights Act of 1866, as codified, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e et. seq. ("Title VII"), and the Pennsylvania Human Relations Act, ("PHRA"), as codified, 43 P.S. § 951 et seq., and seeks damages to redress injuries Plaintiff suffered as a result of discrimination, harassment, and retaliation, which ultimately led to Plaintiff's termination by her employer due to her race, as well as a hostile work environment during Plaintiff's employment.

### JURISDICTION AND VENUE

1. This action involves questions of federal law pursuant to Section 1981 and Title VII.

1

2. This Court has supplemental jurisdiction over the Pennsylvania causes of action brought under the PHRA pursuant to 28 U.S.C. § 1367, as all claims arise from the same nucleus of operative fact.

3. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by the Defendant in the county of Montgomery within the Commonwealth of Pennsylvania, where the discrimination occurred.

4. On January 13, 2025, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") and requested that the EEOC dual-file the Charge with the Pennsylvania Human Relations Commission ("PHRC") pursuant to their work-sharing agreement.

5. On November 21, 2025, the EEOC issued Plaintiff a Notice of Right to Sue.

6. Plaintiff has accordingly exhausted her administrative remedies pertaining to her claims arising under Title VII.

7. As more than one year has passed since she dual-filed her Charge of Discrimination, Plaintiff has now also exhausted her administrative remedies pertaining to her claims arising under the PHRA.

**PARTIES**

1. Plaintiff, MICHELE SWEENEY is a black/African American female and a resident of the County of Chester within the Commonwealth of Pennsylvania.

2. Defendant MASTROCOLA TRUCKING, INC. is a domestic business corporation created under and authorized to do business pursuant to the laws of the Commonwealth of Pennsylvania.

3. At all times material, Defendant MASTROCOLA operated a trucking facility located at 410 Yerkes Road, King of Prussia, PA 19406, where they employed Plaintiff.

4. Defendant TODD MASTROCOLA SR. is an individual male and part owner of Defendant MASTROCOLA, and held supervisory authority over Plaintiff at all times.

## MATERIAL FACTS

5. Defendant MASTROCOLA is a trucking company for which Plaintiff worked as a truck driver.

6. At all times, Plaintiff excelled in her position and executed her job responsibilities to the best of her abilities.

7. During her employment, Plaintiff was one of few Black/African American women who were employed with Defendants.

8. Almost immediately from the start of her employment, Plaintiff noticed that Mastrocola's Black/African American employees were treated disproportionately negatively in comparison to white/Caucasian employees.

9. Around December 23, 2023, during a company Christmas party, owner and operator Todd Mastrocola Jr. ("Todd Jr.") made remarks regarding race to Plaintiff.

10. Specifically, Todd Jr., stated to Plaintiff that "do you notice that all the Black people are eating turkey sandwiches, and the white people are eating Italian…don't you think that's strange?"

11. Plaintiff was stunned by the remark, as it was clearly racially discriminatory, and was further surprised by Todd's blatant racism.

12. Following that incident, around April 2024, the racial harassment drastically escalated when Defendant's white/Caucasian employee Gerald Colaccio (hereinafter "Colaccio")

told Plaintiff that "when you guys aren't here, we refer to you people as **spooks and coons**". Stunned by the flagrant racism, Plaintiff asked Colaccio what he meant, to which he responded "Black people, that's how we refer to you."

13. In response, Plaintiff stated "are you serious?" to which Colaccio replied "yeah".

14. Soon after, in May 2024, Collacio was assigned a route with Plaintiff.

15. During the assigned route, Colaccio battered Plaintiff with harassing and discriminatory comments and conduct meant to humiliate and embarrass Plaintiff.

16. Colaccio did not speak to white/Caucasian coworkers in the same manner in which he spoke to Plaintiff.

17. Around the beginning of May 2024, Defendants discovered that Plaintiff was applying for a position at another company called Kehoe.

18. Once the drivers at Mastrocola discovered that Plaintiff was interviewing for Kehoe, they alleged that Plaintiff was only getting the opportunity because of her race.

19. Following the ongoing harassing comments, Defendants' white employees began retaliating against Plaintiff.

20. Further, when Plaintiff spoke further with the owner of Kehoe, he stated that "this man ain't gonna let you go" in reference to Todd Mastrocola ("Todd"), Defendant's owner, who he seemed to believe was going to be upset by losing a hardworking and high-performing employee such as Plaintiff. Indeed, Plaintiff had an impeccable record with Defendants during her employment.

21. Mastrocola's employees' discriminatory and harassing behavior towards Plaintiff further escalated going forward. For example, in one extremely disturbing incident, Colaccio

screamed in Plaintiff's face, calling her a "**nigger**" and stated in reference to Plaintiff that "**that nigger ain't coming back here**".

22. Colaccio further berated Plaintiff, telling her that "you don't know how to do your fucking job."

23. Colaccio's odious comments were incredibly offensive and shocking to Plaintiff, having lasting effects on Plaintiff's mental and physical health.

24. Notably, witnesses were present during this exchange, including coworker Udo Howell ("Howell"), another Mastrocola employee named Frank (Last Name Unknown).

25. Upon information and belief, Howell duly proceeded to report the discrimination and harassment that he had witnessed blatantly occurring in Defendant's workplace.

26. In response, Defendant's only remedial measure was to release a general newsletter discussing discrimination, and egregiously failed to take any corrective measures against Colaccio, despite his reprehensible conduct.

27. Following Colaccio's racially discriminatory remarks to Plaintiff, Plaintiff spoke with Defendant's secretary, Dorie (Last Name Unknown) ("Dorie") who handled the scheduling for truck drivers.

28. Plaintiff reported the racially discriminatory comments and further explained the situation, and asked to be placed with a different driver going forward who did not discriminate against her and harass her, or tarnish her work ethic due to her race.

29. Plaintiff also then spoke to her manager, engaging in protected activity by reporting the ongoing discrimination and harassment in the workplace.

30. Plaintiff simply requested to not be placed back on the route with Colaccio, as she was in fear of her physical and mental safety in light of his demonstratedly racist behavior and history of racial harassment.

31. Following her report, Plaintiff's supervisor allegedly took note of the situation, but never took action to investigate or remedy the situation.

32. Several days later, Plaintiff went to Mastrocola's office to inquire about the following week's schedule, as she was not listed on it.

33. Defendant's employees "Kim" and Dorie were present in the office, and claimed to not know anything about why Plaintiff was not on the schedule.

34. Those same employees then stated that Todd Sr. had already called Plaintiff, which Plaintiff advised was untrue.

35. Colaccio was also present in the office for the conversation, and told Plaintiff that the manager said "don't bother coming in tomorrow."

36. When Plaintiff asked Defendant's secretary, who was also present in the office, the secretary told Plaintiff to "go home" and that she would "take care of it."

37. A few days later, after still not hearing from Defendants, Plaintiff called her supervisor, Todd Sr., asking about the schedule and what shifts she was being placed on.

38. In response, Todd Sr. told Plaintiff, "well, you don't want to work with Gerald [Colaccio], and based on that, you told me you don't want to work here anymore".

39. That conversation was the last time that Plaintiff heard from Defendants.

40. Accordingly, Defendants terminated Plaintiff in direct retaliation for her exercise of protected activities in reporting and opposing the ongoing harassment and discrimination.

41. Defendants failed to investigate Plaintiff's claim of discrimination and hostile work environment or to take any appropriate remedial measures.

42. Rather, Defendants continued in a pattern and practice of discrimination and retaliation for terminating Plaintiff for engaging in a protected activity and reporting the unlawful discrimination.

43. Defendants ratified Colaccio's unlawful conduct when they terminated Plaintiff for engaging in a protected activity by reporting the unlawful race discrimination.

44. Defendants stated reasons for Plaintiff's termination were pretextual, as Plaintiff was terminated in retaliation for her ongoing reports of discrimination and harassment.

45. At all times, Plaintiff was in accordance with company policy and any and all allegations of performance issues were due to Plaintiff's membership in a protected class and the discrimination from Defendants.

46. Plaintiff was targeted for adverse action including termination due to Plaintiff's membership in a protected class based upon race and due to Plaintiff's reports of and opposition to the discrimination and harassment in the workplace.

47. As a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

48. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

49. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

50. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

51. Plaintiff has further experienced severe emotional and physical distress.

52. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant, jointly and severally.

53. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

54. Defendant at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

55. Defendant's discriminatory conduct was severe and pervasive, and created a hostile work environment for Plaintiff.

56. The above are just some of the examples of the discrimination and retaliation to which Defendants subjected Plaintiff.

57. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

## COUNT I
## <u>RACE DISCRIMINATION UNDER</u>
## <u>42. U.S.C. § 1981</u>

58. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

59. 42 U.S.C. § 1981 states in relevant part as follows:

   a. (a) Statement of equal rights of all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes,

8

licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

60. Defendants discriminated against Plaintiff based on her race in violation of § 1981.

61. Plaintiff makes claims for all damages available to her as a result of Defendants' unlawful discrimination.

## COUNT II
## RETALIATION UNDER
## 42 U.S.C. § 1981

62. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

63. Defendants have violated 42 U.S.C. § 1981 by subjecting Plaintiff to retaliation for her protected complaints and opposition to Defendants' unlawful discriminatory conduct on the basis of her race, by denying Plaintiff like privileges of employment by suspending Plaintiff without pay, and terminating her employment.

64. Plaintiff makes claims for all damages available to her as a result of the Defendants' retaliation.

## COUNT III
## HOSTILE WORK ENVIRONMENT UNDER
## 42 U.S.C. § 1981

65. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

66. While employed by Defendants, Plaintiff was subjected to an intimidating, hostile and offensive work environment because Plaintiff was denied the same privileges of employment as her similarly situated non-black colleagues. The conduct was sufficiently severe and pervasive such that it altered the terms and conditions of Plaintiff's employment such that no other reasonable person in Plaintiff's position would have been able to continue working under the same conditions.

67. Plaintiff makes claims for all damages available to her as a result of the hostile work environment that she was forced to endure during her employment with Defendants.

## COUNT IV
## RACE DISCRIMINATION AND HARASSMENT UNDER THE PHRA
**(*As against Defendant MASTROCOLA TRUCKING*)**

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. The PHRA § 955(a) states that "It shall be an unlawful discriminatory practice…(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

70. Defendant took actions against Plaintiff in violation of the PHRA by discriminating against Plaintiff and ultimately terminating her on the basis of her race and in retaliation for her reports of the same.

71. Defendant also subjected Plaintiff to a hostile work environment in violation of the PHRA by subjecting her to unwanted severe and pervasive conduct on the basis of her race that materially affected her terms and conditions of employment

72. Plaintiff makes claims for all damages available to her as a result of Defendant's unlawful discrimination.

## COUNT V
## RETALIATION UNDER THE PHRA
### (*As against all Defendants*)

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. The PHRA § 955(c) states that "It shall be an unlawful discriminatory practice…(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

75. Defendants retaliated against Plaintiff in violation of the PHRA by terminating her in response to her formal complaint of discrimination.

76. Plaintiff makes claims for all damages available to her as a result of Defendant's unlawful retaliatory actions.

## COUNT VI
## AIDING AND ABETTING DISCRIMINATION UNDER THE PHRA

**(*As against Defendant TODD MASTROCOLA SR.*)**

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. The PHRA § 955(e) states that "It shall be an unlawful discriminatory practice…(e) For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

79. Defendant LILES aided and abetted Defendant CANON's unlawful employment practices perpetrated against Plaintiff.

80. Plaintiff makes claims for all damages available to him as a result of Defendant LILES' unlawful aiding and abetting of Defendant CANON's discrimination.

## COUNT VII
## DISCRIMINATION UNDER TITLE VII
**(*As against Defendant MASTROCOLA TRUCKING*)**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-2, states in relevant part that: "(a)Employer practices - It shall be an unlawful employment practice for an employer—(1)to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

83. Defendant discriminated against Plaintiff by subjecting her to unlawful employment practices, including but not limited to disparate treatment and termination on her basis of her race.

84. Plaintiff accordingly makes claims for all damages available to her against Defendant under Title VII.

## COUNT VIII
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII
**(*As against Defendant MASTROCOLA TRUCKING*)**

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

86. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-2, states in relevant part that: "(a)Employer practices - It shall be an unlawful employment practice for an employer—(1)to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

87. Defendant also subjected Plaintiff to a hostile work environment in violation of Title VII by subjecting her to unwanted severe and pervasive harassing conduct on the basis of her race and sex that materially affected her terms and conditions of her employment.

88. Plaintiff accordingly makes claims for all damages available to her against Defendant under Title VII.

## COUNT IX
## RETALIATION UNDER TITLE VII
**(*As against Defendant MASTROCOLA TRUCKING*)**

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

90. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-3, states in relevant part that: (a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

91. Defendant violated Plaintiff's rights by subjecting Plaintiff to retaliation in response to her protected complaints and opposition to Defendants' unlawful discriminatory conduct on the basis of her race, including but not limited to denying Plaintiff like privileges of employment by terminating Plaintiff's employment.

92. Plaintiff accordingly makes claims for all damages available to her under Title VII.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

Dated: January 14, 2026

                                            **FREUNDLICH & LITTMAN, LLC**
Attorneys for Plaintiff

By: */s/ Nathaniel N. Peckham, Esq.*
Nathaniel N. Peckham, Esquire
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215) 545-8510
E: *nathaniel@fandllaw.com*